**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**5:17CV111**

| | |
|---|---|
| **TIMOTHY CURTIS STOKER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| **NANCY A. BERRYHILL,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

This matter is before the Court on the parties' cross motions for summary judgment (# 10, 23).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his claim for disability benefits. The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons set forth below, Plaintiff's motion for summary judgment is DENIED and the Commissioner's motion for summary judgment is GRANTED.

**I.    Procedural History**

On March 6, 2013, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning August 7, 2012. (Transcript of Administrative Record ("T.") 36.) The Social Security Administration denied Plaintiff's claim initially on August 23, 2013. (T. 36.) The claim was denied upon reconsideration on January 15, 2014. (T. 36.) On March 13, 2014, Plaintiff filed a written request for a hearing. (T. 36.)

On January 14, 2016, a disability hearing was held before an Administrative Law Judge

---

[1] The Commissioner filed two additional Motions for Summary Judgment that have been rendered moot. See (# 17, 19).

("ALJ") in Charlotte, North Carolina. (T. 36.) Janette Clifford, a vocational expert ("VE"), appeared at the hearing. (T. 36.) Rebecca Lepkowski, an attorney, represented Plaintiff. (T. 36.)

The ALJ issued a decision finding that Plaintiff has not been under a disability from April 7, 2012, through the date of his decision, February 29, 2016. (T. 36-44.) Plaintiff requested review of the ALJ's decision. (T. 12-14.) The Appeals Council denied Plaintiff's request for review. (T. 12.) On June 28, 2017, Plaintiff filed the instant action seeking review of the Commissioner's final decision. See Compl. (# 1).

## II. Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Under the five-step sequential evaluation, the Commissioner must consider each of the following, in order: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or medically equal the severity of one or more of the listing of impairments contained in Appendix 1 of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520; Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 653 n.1.

At the first two steps of the sequential evaluation, the burden is on the claimant to make

the requisite showing. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If a claimant fails to satisfy his or her burden at either of these first two steps, the ALJ will determine that the claimant is not disabled and the process comes to an end. Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir. 2015). The burden remains on the claimant at step three to demonstrate that the claimant's impairments satisfy a listed impairment and, thereby, establish disability. Monroe, 826 F.3d at 179.

If the claimant fails to satisfy his or her burden at step three, however, then the ALJ must still determine the claimant's RFC. Mascio, 780 F.3d at 635. After determining the claimant's RFC, the ALJ proceeds to step four in order to determine whether the claimant can perform his or her past relevant work. Id. The burden is on the claimant to demonstrate that he or she is unable to perform past work. Monroe, 826 F.3d at 180. If the ALJ determines that a claimant is not capable of performing past work, then the ALJ proceeds to step five. Mascio, 780 F.3d at 635.

At step five, the ALJ must determine whether the claimant can perform other work. Id. The burden rests with the Commissioner at step five to prove by a preponderance of the evidence that the claimant is capable of performing other work that exists in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience. Id.; Monroe, 826 F.3d at 180. Typically, the Commissioner satisfies her burden at step five using the testimony of a VE, who offers testimony in response to a hypothetical question from the ALJ that incorporates the claimant's limitations. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180. If the Commissioner satisfies her burden at step five, then the ALJ will find that the claimant is not disabled and deny the application for disability benefits. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180.

### III. The ALJ's Decision

In his February 29, 2016 decision, the ALJ ultimately found that Plaintiff was not disabled under sections 216(i) and 233(d) of the Social Security Act. (T. 44.) In support of this conclusion, the ALJ made the following specific findings:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

(2) The claimant has not engaged in substantial gainful activity since August 7, 2012, the alleged onset date (20 C.F.R. § 404.1571 et seq.).

(3) The claimant has the following severe impairments: diabetes mellitus type 2, diabetic peripheral neuropathy, status post right transmetatarsal amputation, history of virteous hemorrhage, and hyperlipidemia (20 C.F.R. § 404.1520(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).[2]

(5) The claimant has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except he must be permitted to change positions between siting and standing twice per hour; he cannot climb ropes, ladders, or scaffolds; he is limited to occasional climbing of ramps and stairs; frequent, but not constant, handling and fingering; and occasional stooping and kneeling, but no crawling or crouching.[3]

(6) The claimant has no past relevant work (20 C.F.R. § 404.1565).

(7) The claimant was born on May 21, 1964, and he was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 C.F.R. § 404.1563).

(8) The claimant has at least a high school education, and he is able to communicate in English (20 C.F.R. § 404.1564).

(9) Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. § 404.1568).

---

[2] The ALJ specifically looked at Listing 11.14. (T. 38.)
[3] Under the Regulations, a full range of light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). If an individual can do light work, he or she can also do sedentary work, unless there are additional limiting factors, such as loss of fine dexterity or an inability to sit for long periods of time. Id.

(10) Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform (20 C.F.R. §§ 404.1569, 404.1569(a)).[4]

(11) The claimant has not been under a disability, as defined in the Social Security Act, from August 7, 2012, through the date of his decision, February 29, 2016 (20 C.F.R. § 404.1520(g)).

(T. 36-44.)

## IV. Standard of Review

Title 42, United States Code, Section 405(g) provides that an individual may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review is limited in that the district court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); accord Monroe, 826 F.3d at 186. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig, 76 F.3d at 589 (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's final decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he was not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. Id.

---

[4] The VE testified that Plaintiff could perform the following jobs: (1) a rental clerk, with 152,739 jobs nationally; (2) a gate guard, with 272,231 jobs nationally; and (3) an information clerk, with 166,532 jobs nationally. (T. 44.)

5

V.   Discussion[5]

   A.   **The ALJ properly evaluated the opinions offered by treating source John McMenemy, M.D.[6]**

In Plaintiff's first assignment of error, he argues that the ALJ failed to properly weigh the opinions offered by Dr. McMenemy. Pl.'s Mem. Supp. (# 11) at 5-13. Plaintiff concludes that the case should be reversed and remanded to award benefits, or in the alternative, the case should be remanded for further proceedings. Id. at 18.

At the time of the ALJ's decision, the Regulations provided as follows with respect to the Social Security Administration's criteria for evaluating opinion evidence:

> Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. § 404.1527(a)(2). The Regulations direct that the ALJ must analyze and weigh the evidence of record with the following factors taken into consideration, unless the opinion of the treating source is given controlling weight: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. 20 C.F.R. § 404.1527(c); see Cohen v. Berryhill, 272 F. Supp. 3d 779, 781 (D.S.C. Aug. 23, 2017).

As a general rule, more weight is given to a medical professional who examines a claimant, as opposed to a non-examining source. 20 C.F.R. § 404.1527(c)(1); see Patterson v. Colvin, No. 5:12-CV-063-RLV-DCK, 2013 WL 3035792, at *4 (W.D.N.C. June 17, 2013). When a treating source's opinion regarding the nature and severity of a claimant's impairments is "well-supported

---

[5] This opinion reflects the Code of Federal Regulations as it stood on the relevant date, which is the date of the ALJ's decision: February 29, 2016. See (T. 44.)
[6] Plaintiff has collapsed two distinct arguments into his first assignment of error. See Pl.'s Mem. Supp. (# 11) at 5-13. The Court has addressed these arguments separately for clarity.

6

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given "controlling weight." 20 C.F.R. § 404.1527(c)(2). An ALJ may conclude that opinion evidence from a treating source is entitled to little weight, but the ALJ is nevertheless required to adequately explain that decision. See Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (noting that the ALJ must explain why when he fails to give a treating source less than controlling weight); see also Hines v. Barnhart, 453 F.3d 559, 563 n.2 (4th Cir. 2006) ("The treating physician rule is not absolute. An ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contradictory evidence.") (internal quotation omitted)).

In the instant case, the ALJ noted that Dr. Mc McMenemy provided several medical source statements that endorsed Plaintiff's alleged disability. (T. 42. (citing Exs. 8F, 14F, and 21F)). In Exhibit 21F, the most recent medical source statement, Dr. McMenemy states that Plaintiff is limited to performing tasks in a seated position for a maximum of two hours per standard work day and standing and/or walking for a maximum of two hours in a standard work day. (T. 42.) Dr. McMenemy also concluded that it was medically necessary for Plaintiff to elevate his legs to waist level for an hour at a time while sitting. (T. 42.) Dr. McMenemy denied that the claimant had any significant limitations in reaching, handling, or fingering. (T. 42.) Dr. McMenemy determined that Plaintiff's symptoms would frequently interfere with his concentration and estimated that Plaintiff would likely have two to three medical absences per month. (T. 42.)

When evaluating the weight to give to Dr. McMenemy's opinions, the ALJ concluded:

> While I have taken the treatment notes submitted by Dr. McMenemy into consideration, I give little weight to the medical source statements endorsing disability, including the above-mentioned opinions. The record does not support the assertion that the claimant would require two to three medical absences per month, as the overall record clearly demonstrates that the majority of his doctor's visits were routine scheduled visits that took place every few months. Further,

7

> while he asserts that the claimant must elevate his legs up to waist level while sitting, these instructions are not found in his treatment notes. While I concede that the claimant is required to periodically alternate positions, the medical evidence does not indicate that he is limited to a total of two hours of sitting, walking or standing in an eight hour workday.

(T. 42.)

In the ALJ's opinion, he next held that Dr. Michael Kodos was also entitled to "little weight." (T. 42.) Then, with respect to Plaintiff's vision impairment only, Dr. Kelty was given "significant weight." (T. 43.) Finally, the ALJ noted that he gave "[s]ignificant weight" to the opinions of the State agency medical consultants.[7] (T. 43.) Plaintiff argues that this cannot stand because the State agency medical consultants essentially found Plaintiff could perform only sedentary work.[8] Pl.'s Mem. Supp. (# 11) at 11. The Court is not persuaded.

The State agency medical consultants were Hari Kuncha, M.D. and Frank Virgili, M.D. (T. 96-98, 109-11.) Drs. Kuncha and Virgili both opined as follows: Plaintiff could occasionally lift and/or carry 20 pounds (including upward pulling). (T. 96, 109.) Plaintiff could frequently lift and/or carry 10 pounds (including upward pulling). (T. 96, 110.) Plaintiff could stand and/or walk (with normal breaks) for a total of 2 hours and sit (with normal breaks) for a total of about six hours in an eight-hour workday. (T. 96-97, 110.)

Plaintiff's argument fails because the State agency medical consultants did not essentially limit him to sedentary work. In fact, light exertional work is defined in the Regulations, as follows:

> Light work involves lifting more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or

---

[7] The ALJ did not err in his evaluation of the State agency medical consultants because they "are experts in Social Security disability evaluation." See 20 C.F.R. § 404.1527(e)(2)(i). The ALJ shall "consider the state agency physician assessments as opinion evidence." Smith v. Colvin, No. 6:15-1489-TLW-KFM, 2016 WL 4150755, at *19 (D.S.C. May 31, 2016) (citing 20 C.F.R. § 404.1527(e)(2)(i)); see also Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986) (noting that opinions of a non-examining physician must be consistent with the record as a whole to constitute substantial evidence).

[8] Plaintiff argues that if he is limited to sedentary work, he would be disabled under Grid Rule 201.14. Pl.'s Mem. Supp. (# 11) at 11.

standing, <u>or when it involves sitting most of the time</u> with some pushing and pulling of arm or leg controls. To be considered capable of performing a full range or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b) (emphasis added).

In sum, the ALJ's decision not to afford controlling weight to Dr. McMenemy's opinion is consistent with the relevant legal standards and supported by substantial evidence. See <u>Morgan v. Comm'r of the Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999) ("[T]he opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability."). Consequently, Plaintiff's first assignment of error is overruled.

**B.     Substantial evidence supports the ALJ's RFC assessment.**

In Plaintiff's next assignment of error, he argues that the ALJ erred in finding that he could perform light exertional work. Pl.'s Mem. Supp. (# 11) at 12-13. Plaintiff contends that the ALJ failed to cite to evidence in support of his RFC, and "such a poorly thought out RFC warrants remand." <u>Id.</u> at 12 (citing <u>Mascio</u>, 780 F.3d at 636-37). Plaintiff concludes that the case should be reversed and remanded to award benefits, or in the alternative, the case should be remanded for further proceedings. <u>Id.</u> at 18.

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). SSR 96-8p provides that the ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." <u>Monroe</u>, 826 F.3d at 189 (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). In formulating a RFC, the ALJ is not required to discuss each and every piece of evidence. See <u>Reid v. Comm'r of Soc. Sec.</u>, 769 F.3d 861, 865 (4th Cir. 2014). The ALJ is, however, required to build a logical bridge from the evidence of record to his conclusion. <u>Monroe</u>, 826 F.3d at 189; <u>see also Clifford</u>

v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

At the outset, as noted above, the ALJ gave "significant weight" to the opinions of the State agency medical consultants, who opined that Plaintiff could perform work that was consistent with a finding that he could engage in light exertional work. See (T. 43, 96-98, 109-11). The ALJ also noted that Plaintiff testified he could lift 50 pounds. (T. 39.) When assessing Plaintiff's credibility, the ALJ noted that his impairments were severe and imposed significant exertional limitations. (T. 40.) The ALJ concluded, however, that the objective medical evidence failed to support Plaintiff's allegations that he has been, and continues to be, disabled. (T. 40.)

With respect to Plaintiff's daily activities, the ALJ found that he has been able to perform most daily activities.[9] (T. 40-41.) For example, Plaintiff bicycled and walked three to four times per week. (T. 41.) Plaintiff exhibited normal coordination and gait. (T. 41.) In May 2013, Plaintiff reported that he exercised intermittently. (T. 41.) Plaintiff also reported that he could do light housework/laundry if needed. (T. 41.) Plaintiff denied having problems with personal care tasks such as dressing, bathing, caring for hair, shaving, feeding himself, or using the toilet. (T. 41.) Plaintiff also reported that he could mow the lawn on occasion. (T. 41.)

In sum, Plaintiff has failed to refer to any evidence that undermines the ALJ's RFC. See Smith-Williams v. Berryhill, No. 2:16-CV-03556, 2017 WL 1284961, at *9 (S.D.W. Va. Mar. 6, 2017) ("While Claimant may disagree with the ALJ's RFC finding, the determination of a claimant's RFC is ultimately the province of the ALJ as the representative of the Commissioner.")

---

[9] The ALJ did not err in considering Plaintiff's daily activities. See 20 C.F.R. § 404.1529(c)(3)(i); Mastro, 270 F.3d at 179-80 (holding that the ALJ properly considered the claimant's reported daily activities when evaluating her RFC); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (finding that the claimant's pattern of daily activities suggested that he was not disabled from working); Christian v. Colvin, No. 4:15-CV-41, 2016 WL 4056210, at *8 (E.D. Va. May 6, 2016) (finding the ALJ did not err in considering that the claimant could read, go to church, go out to eat, take on-line classes, and play with her grandson).

(internal quotation marks omitted); see also Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (recognizing that a claimant's RFC determination "is within the province of the ALJ, not a doctor"). Therefore, Plaintiff's second assignment of error must be overruled.

### C. Substantial evidence supports the ALJ's credibility determination.

In his third and final assignment of error, Plaintiff argues that the ALJ failed to properly evaluate his credibility. Pl.'s Mem. Supp. (# 11) at 13-17. Plaintiff contends that the ALJ used boilerplate language, which is seen in almost every ALJ decision denying benefits. Id. at 15. Plaintiff further argues that the ALJ's credibility determination is not supported by substantial evidence. Id. at 16. Plaintiff concludes that the case should be reversed and remanded to award benefits, or in the alternative, the case should be remanded for further proceedings. Id. at 18.

Under the Regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594; see Lewis, 858 F.3d at 865-66; 20 C.F.R. § 404.1529(a). Pursuant to the first step, the ALJ must determine that objective medical evidence is present to demonstrate that a claimant has a medical impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b).

Under the second step, the ALJ must evaluate the intensity and persistence of the claimant's symptoms in order to determine the extent to which it affects his ability to work. Id. § 404.1529(c). Pursuant to this step, the ALJ must assess the credibility of the claimant's statements regarding his symptoms and their effect on his ability to perform work activities. Id. § 404.1529(c)(4). When the ALJ finds the claimant's statements to be less than fully credible, he must support this conclusion by identifying those statements he finds less than credible and explaining "how he decided which . . . to believe and which to discredit." Mascio, 780 F.3d at 640.

Pursuant to SSR 96-7p, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p")[10], if an ALJ finds a claimant to be less than fully credible, the ALJ must provide specific reasons that are based on the evidence. In particular, SSR 96-7p provides:

> It is not sufficient for this adjudicator to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight.
>
> . . . .
>
> This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

Id. at *2, *4. When evaluating a claimant's subjective complaints, the Commissioner is required to consider the following factors:

> (i)  Your daily activities;
>
> (ii)  The location, duration, frequency, and intensity of your pain and other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measure you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

---

[10] Although not applicable in this case, SSR 96-7p was superseded by SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017), which is applicable to ALJ decisions issued <u>on or after March 28, 2016</u>. As noted, the instant ALJ decision was issued on February 29, 2016. See (T. 44).

20 C.F.R. § 404.1529(c)(3).

In the instant case, in pertinent part, the ALJ found as follows: Initially, the ALJ noted that Plaintiff alleged disability due to diabetic neuropathy, right half foot amputation, neuropathy, and difficulties with balance. (T. 39.) At Plaintiff's hearing before the ALJ, he testified that he has worked in law enforcement for most of his career and until August 2012. (T. 39.) Plaintiff stated that he stopped working due to foot problems and his right foot amputation. (T. 39.) When asked why he could not engage in a different profession, Plaintiff described difficulties with pain and swelling in his lower extremities. (T. 39.) Plaintiff explained that he experiences swelling if he sits for two to three hours or stands for a prolonged period. (T. 39.) Plaintiff stated that if he sits for two hours, he would have to stand for two to alleviate swelling. (T. 39.) Plaintiff also stated that the pain hinders his concentration. (T. 39.) Plaintiff further stated that he experiences difficulties in grip due to knots in the palm of his hands and thumbs. (T. 39.) Plaintiff testified that he can lift 50 pounds, but he is unable to carry 50 pounds. (T. 39.)

Medical records reveal that Plaintiff was diagnosed with diabetes in 1995. (T. 40.) Plaintiff's foot problems started in July 2011, when he developed an ulcer of the right great toe that required amputation of the toe in August 2011. (T. 40.) In November 2011, Plaintiff developed osteomyelitis of the right foot that required amputation of the toes and forefoot. (T. 40.) In the years after that, Plaintiff was treated for Type II diabetes and diabetic retinopathy. (T. 40.) Plaintiff's foot problems continued. (T. 40.) In April 2012, it was noted that Plaintiff's incision was well-healed, but he had a shallow ulcer at the bottom of his foot. (T. 40.) It was further noted that Plaintiff was having difficulty using his prosthesis. (T. 40.) In December 2013, a medical source described Plaintiff's symptoms as extremity pain and numbness in both lower extremities, swelling, difficulty walking, loss of manual dexterity due to amputation, dizziness,

occasional hypoglycemia, and general malaise. (T. 40.) Plaintiff underwent several treatments of panretinal photocoagulation in both eyes, as well as a virectomy of the right eye. (T. 40.)

The ALJ's credibility determination provides as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. While the claimant's impairments are indeed severe and impose significant exertional limitations, the objective medical evidence fails to support allegations that he has been, and continues to be, disabled.

(T. 40.)

In support of this credibility determination, the ALJ found that a treatment provider, Angela M. Glass, FNP-C, noted that Plaintiff "generally feels well." (T. 40.) Glass also noted that Plaintiff was exercising intermittently. (T. 41.) The ALJ determined that clinical evidence showed that Plaintiff was able to perform most daily activities. (T. 40-41.) For example, Plaintiff bicycled and walked three to four times per week. (T. 41.) Plaintiff denied any problems with personal care tasks. (T. 41.) Plaintiff reported that he performed light cleaning. (T. 41.) As a hobby, Plaintiff reported fishing two to three times per month. (T. 41.) In July 2013, Plaintiff stated that his neuropathy "does not bother him." (T. 41.) Ophthalmologist Dr. Kelty found that Plaintiff's vision improved to 20/20 with correction after the vitrectomy. (T. 41.) Dr. Kelty had "no hesitation" in stating that Plaintiff could perform any competitive, full-time work. (T. 41.)

In sum, the ALJ applied the correct legal standards and his credibility determination is supported by substantial evidence. See Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Consequently, Plaintiff's third and final assignment of error is overruled.

## VI. Conclusion

In light of the foregoing, Plaintiff's motion for summary judgment (# 10) is DENIED, and

the Commissioner's motion for summary judgment (# 23) is GRANTED. The remaining motions (# 17, 19) are DISMISSED as moot.

Signed: July 29, 2018

Dennis L. Howell
United States Magistrate Judge